**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

_____

ROARING LION, LLC, a
Montana Limited Liability
Company,                                       CV 11-2-M-DWM-JCL

                          Plaintiff,

            vs.                                FINDINGS &RECOMMENDATION
                                               OF UNITED STATES
NAUTILUS INSURANCE                             MAGISTRATE JUDGE
COMPANY, an Arizona
Corporation,

                          Defendant.

_____

        This insurance dispute comes before the Court on Defendant Nautilus

Insurance Company's ("Nautilus") motion for summary judgment regarding

Plaintiff Roaring Lion, LLC's ("Roaring Lion") claims for declaratory judgment,

breach of contract, and unfair trade practices.  For the reasons set forth below,

Nautilus's motion for summary judgment should be denied.

## I.  Background

        In August 2006, Vintage Construction, Inc. ("Vintage") entered into an

agreement with Roaring Lion to build a private residence called the Sawtooth

Cabin.   Dkt. 17-3, at ¶ 10.  As contemplated by that agreement, Vintage obtained

two consecutive Commercial General Liability policies ("Policies") from

Nautilus,[1] each with a $1,000,000 occurrence limit and a $2,000,000 aggregate

limit. Dkt. 17-1, 17-2. Both Policies identified Vintage as the named insured and

listed Roaring Lion as an additional named insured. Dkt. 17-1, at 2 &76, 17-2, at

3 & 22. Sometime after the first Policy went into effect, Vintage began

construction on the cabin. During the construction process, Vintage subcontracted

portions of the work out to third party subcontractors. Dkt. 17-3, at ¶ 12.

In 2009, Roaring Lion filed suit in state court against Vintage and two of

those subcontractors, asserting several claims arising out of alleged construction

defects and faulty workmanship. Dkt. 20-1. Vintage tendered Roaring Lion's

claims to Nautilus for defense and indemnification. Dkt. 20-4, ¶ 11. After

Nautilus refused to defend and denied coverage, Vintage filed suit against

Nautilus in state court, seeking a declaration of its rights under the Policies and

alleging breach of contract, unfair trade practices, and breach of the duty of good

faith and fair dealing. Dkt. 20-4. That case is now pending in this Court,

following removal by Nautilus based on diversity jurisdiction.

Roaring Lion also sought coverage under the Policies, asking that Nautilus

---

[1] The first Policy was effective from February 1, 2006 to February 1, 2007, and the second from February 1, 2007 to February 1, 2008. At all times relevant to this litigation, Vintage was insured under one of these Policies

indemnify it for the injuries and losses alleged in its lawsuit against Vintage. Dkt. 20-3, ¶ 10. When Nautilus denied coverage, Roaring Lion commenced this action in state court, seeking a declaration of coverage under the Policies and alleging claims for breach of contract and unfair trade practices. Dkt. 20-3. Nautilus subsequently removed the case to this Court based on diversity jurisdiction,[2] and has moved for summary judgment on all of Roaring Lion's claims.

Based on the record as it stood at the time it filed its motion, Nautilus sought summary judgment on several grounds. First, Nautilus maintained that Roaring Lion was not entitled to first-party coverage as an additional named insured under the Policies because there had been no claims or lawsuits asserted against it that would trigger a duty on Nautilus's part to defend or indemnify. Second, Nautilus argued that to the extent Roaring Lion might be seeking benefits under the Policies as a third-party claimant, it was not entitled to do so because its underlying lawsuit against Vintage was still pending. Nautilus also took the position that Roaring Lion did not have standing to assert any claims that Vintage might have under the Policies. Finally, even assuming Roaring Lion was entitled to seek benefits as a first-party additional named insured or a third-party claimant, Nautilus argued that Roaring Lion's claims fail as a matter of law because the

_____

[2] Dkt. 1.

Policies contain various exclusions precluding coverage.

In the time since Nautilus filed its motion, certain procedural developments have effectively dispensed with all but one of Nautilus's arguments. Most importantly, the record reflects that Roaring Lion settled its underlying lawsuit against Vintage and the state court entered a stipulated judgment in Roaring Lion's favor on May 25, 2011. Dkt. 20-2. As part of that settlement, Vintage assigned its declaratory judgment and breach of contract claims to Roaring Lion.[3] Dkt. 20-5. Because the underlying case has now been resolved, Nautilus agreed at oral argument that Roaring Lion is entitled to pursue any third-party claims it might have under Montana's Unfair Trade Practices Act, §§ 33-18-201, et seq. And in light of Vintage's assignment, Nautilus also agreed that Roaring Lion has standing to proceed with its derivative claims for declaratory judgment and breach of contract.[4]

Roaring Lion's position at oral argument also served to narrow the issues now before the Court. As noted above, Nautilus moved for summary judgment on

---

[3] Vintage did not assign its claim for unfair trade practices and breach of the duty of good faith and fair dealing. At oral argument, Roaring Lion agreed that Vintage had thus retained its claim for breach of the duty to defend.

[4] The Court assumes for purposes of this discussion that Roaring Lion has adequately pled these assigned claims.

the threshold ground that Roaring Lion was not entitled to first-party coverage as an additional named insured under the Policies because there had been no claims or lawsuits asserted against it. In its response brief, Roaring Lion conceded that "Nautilus owe[d] Roaring Lion no duty to Roaring Lion to defend or indemnify Roaring Lion (because it ha[d] not been sued), but took the position that Nautilus owed it other obligations under the Policies that precluded the summary dismissal of its claims. Dkt. 19, at 8. In particular, Roaring Lion maintained that "Nautilus owe[d] Roaring Lion a contractual obligation to defend and indemnify each of the other named insureds," including Vintage. At oral argument, however, Roaring Lion stated that it was abandoning this argument.

All of these various developments leave Roaring Lion with its third-party UTPA claims, and its assigned claims for declaratory judgment and breach of contract. And for purposes of resolving Nautilus's motion for summary judgment, these developments leave Nautilus with one final, potentially dispositive, argument – that Roaring Lion's claims are barred by the Policies' so-called "business risk" exclusions.

## II. Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all

justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

## III.    Discussion

It is well-established in Montana that "[t]he interpretation of an insurance contract presents a question of law."[5] *Moodroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, ¶ 24 (Mont. 2008). The Court must interpret the terms of the "insurance policy according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042, ¶ 16 (Mont. 2008) (quoting *Stutzman v. Safeco Ins. Co. of America*, 945 P.2d 32, 34 (Mont. 1997). In doing so, the Court "may not rewrite the contract at issue, but must enforce it as written if its language is clear and explicit." *Allstate Ins. Co.*, at ¶ 16.

If the terms of an insurance policy are ambiguous, however, that ambiguity must be strictly construed against the insurer and in favor of extending coverage. *Stutzman*, 945 P.2d at 34; *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 709 (Mont. 2003). "An '[a]mbiguity exists only when the contract taken as a whole or in its

_____

[5] Sitting in diversity jurisdiction, this Court looks to the substantive law of Montana as the forum state for purposes of the ensuing analysis. *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

wording or phraseology is reasonably subject to two different interpretations.'"
*Farmers Alliance Mut. Ins. Co. v. Holeman*, 961 P.2d 114, ¶ 25 (Mont. 1998).
Regardless of whether they are ambiguous, exclusions from coverage will be
narrowly and strictly construed against the insurer "because they are contrary to
the fundamental protective purpose of an insurance policy." *Revelation
Industries, Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, ¶ 46 (Mont.
2009). *See also Stutzman*, 945 P.2d at 36.

It is with these principles in mind that the Court considers Nautilus's motion
for summary judgment and the terms of the Policies at issue here. The Policies'
basic insuring agreement provides, in part, that Nautilus "will pay those sums that
the insured becomes legally obligated to pay as damages because of...'property
damage' to which this insurance applies," so long as that damage "is caused by an
'occurrence'..." Dkt. 17-1, at 9. Nautilus assumes for purposes of this motion,
and the Court will do the same, that Roaring Lion was seeking damages from
Vintage in the underlying action because of "property damage" caused by an
"occurrence," within the meaning of the Policies' insuring agreement.

The coverage provided by this insuring agreement is, however, subject to
several exclusions. Nautilus argues that the Policies' business risk exclusions,
particularly those set forth at (j)(5) & (6), (l), and (m), unambiguously preclude

coverage for the claims Roaring Lion asserted against Vintage in the underlying lawsuit. Assuming they do, Nautilus maintains it is entitled to summary judgment on Roaring Lion's assigned claims for breach of contract and declaratory judgment, as well as its third-party UTPA claims.

## A. Exclusions j(5) & j(6): Damage to Property

Nautilus begins by invoking exclusion (j), which bars coverage for various types of property damage. In particular, Nautilus relies on exclusions (j)(5) & (6), which state that the insurance provided by the Policies does not apply to:

**j. Damage to Property**

"Property damage" to: ...

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Dkt. 17-1, at 12.

Nautilus argues that these exclusions unambiguously preclude coverage for the claims Roaring Lion made against Vintage in the underlying action. To determine whether Nautilus is correct, it is first necessary to understand the nature and scope of those underlying claims. Roaring Lion's complaint alleged generally

that Vintage's subcontractors incorrectly poured the Sawtooth Cabin's foundation, which "not only resulted in damage to the foundation itself, but also resulted in significant damage to the entire structure/property, including but not limited to, a collapse of the framing." Dkt. 17-3, ¶ 13. The complaint also alleged that Vintage did not construct the framing properly, which led to structural failure. Dkt. 17-3, ¶¶ 15-18, 22. Roaring Lion asserted several claims against Vintage, including claims for breach of contract and negligence. Roaring Lion also sought to hold Vintage responsible under a theory of respondeat superior for the allegedly negligent work performed by the subcontractors who poured the foundation. While Roaring Lion thus alleged in its lawsuit against Vintage that the foundation and framing work were both defective, it now argues in response to Nautilus's motion for summary judgment that Vintage's framing work was adequate and only had to be replaced because of the subcontractors' faulty work on the foundation.

Nautilus takes the position that exclusions (j)(5) & (6) unambiguously preclude coverage for all of Roaring Lion's underlying claims. In doing so, Nautilus concedes at the outset that there is a factual dispute as to whose faulty workmanship – that of Vintage or its subcontractors – actually caused Roaring Lion's damages. Dkt. 22, at 5. According to Nautilus, however, this factual dispute over whose faulty work caused the damage to the framing is immaterial for

purposes of its summary judgment motion.

As Nautilus reads it, exclusion (j)(5) precludes coverage for damage to real property on which Vintage or any of its subcontractors are performing operations, if the property damage arises out of those operations. Because it is undisputed that all of the damage Roaring Lion alleged in the underlying lawsuit arose out of operations as they were being performed on the Sawtooth Cabin either by Vintage or its subcontractors, Nautilus maintains that exclusion (j)(5) plainly and unambiguously precludes coverage.

Nautilus argues the same can be said with respect to exclusion (j)(6), which it reads as precluding coverage for "property damage" to "any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." Dkt. 22, at 6. The Policies define "[y]our work" as work or operations performed by the insured or on the insured's behalf.[6] Nautilus maintains that exclusion (j)(6) unambiguously precludes coverage for damage to the framing

---

[6] Dkt. 17-1, at 24. Roaring Lion argues that the definition of "your work" does not encompass work done by Vintage's subcontractors. This argument is not convincing. Roaring Lion does not dispute that the subcontractors responsible for pouring the foundation were acting on Vintage's behalf. Instead, it argues the fact that exclusion (j)(5) specifically refers to "subcontractors" and exclusion (j)(6) does not, means that the term "your work" is ambiguous. The Court disagrees. The term "your work" clearly encompasses work performed on Vintage's behalf, which would include work performed by Vintage's subcontractors.

because it is undisputed that the damage was due to the fact that either Vintage or its subcontractors incorrectly performed their work on the Sawtooth Cabin.  Dkt. 17-1, at 24.

The problem with Nautilus's argument, however, is that it overlooks the exclusions' opening reference to "that particular part" of the real property.  By its terms, exclusion (j)(5) only excludes damage to "*that particular part* of real property on which you or any...subcontractors...are performing operations, if the 'property damage' arises out of those operations."  Dkt. 17-1, at 12 (emphasis added).  Likewise, exclusion (j)(6) only excludes damage to "*that particular part* of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  Dkt. 17-1, at 12.  The Policies do not define what is meant by the phrase, "that particular part."

Absent a written definition, there are two ways to read this language.  One is to read the exclusions as Nautilus suggests, and construe the phrase "that particular part" broadly to encompass the entire Sawtooth Cabin structure.  *See e.g. Lafayette Ins. Co. v. Peerboom*, 2011 WL 2194037 *11 (S.D. Miss. 2011); *Jet Line Services, Inc. v. American Employers Ins. Co.*, 537 N.E.2d 107, 111 (Mass. 1989).  Given that construction, exclusion (j)(5) would apply to damage arising out of operations performed on any part of the structure, including the

subcontractors' work on the foundation and Vintage's work on the framing. And (j)(6) would preclude coverage for damage to the framing, regardless of whether that damage was caused by Vintage's incorrect work on the framing or some other component part of the structure, like the foundation. In both scenarios, coverage for Roaring Lion's claims would be excluded and any dispute as to whether the damage to the framing was caused by the Vintage's work on the framing or its subcontractor's work on the foundation would be irrelevant.

A second, equally plausible way to read the exclusions, however, is to more narrowly construe the phrase "that particular part" as encompassing only that particular part of the cabin on which the allegedly defective work was performed. *See e.g. Fortney & Weygandt, Inc. v. American Manufacturers Mutual Ins. Co.*, 595 F.3d 308, 311 (6th Cir. 2010) (construing Ohio law); *Mid-Continent Casualty Co. v. JHP Development, Inc.,* 557 F.3d 207, 214 (5th Cir. 2009) (construing Texas law). Read this way, the exclusions would allow for a distinction between work on the cabin's foundation and work on its framing and would preclude coverage only for damage to that particular component part of the cabin on which the defective work was performed.

Roaring Lion concedes that, under either reading, coverage for damage to the foundation is excluded because that damage was caused by, or arose out of, the

subcontractors' defective work on the foundation.[7]   But Roaring Lion also seeks to recover for the damage to the cabin's framing.  If exclusions (j)(5) & (j)(6) are read more narrowly to preclude coverage only for damage to that particular component part of the cabin on which the defective work was performed, then the question of whether the damage to the framing was caused by Vintage's work on the framing, or the subcontractors' work on the foundation, is a critical one. Assuming, as Roaring Lion now argues, that the insured's work on the cabin's framing was not defective, and the damages to the framing were caused by defective work performed on a different part of the cabin, i.e. the foundation, then exclusions (j)(5) & (6) would not apply.

Nautilus argues that this second, alternative reading is not reasonable, however, in light of the general principle that commercial general liability policies are not intended to cover an insured's faulty work.   For support, Nautilus relies on *McGowan v. State Farm Fire and Cas. Co.*, 100 P.3d 521, 525 (Colo. App. 2004), in which the court recognized that "[c]omprehensive general liability policies normally exclude coverage for faulty workmanship based on the rationale that poor workmanship is considered a business risk to be borne by the policyholder, rather than a 'fortuitous event' entitling the insured to coverage."   The *McGowan*

---

[7]  Both parties agreed on this point at oral argument.

court held that exclusions identical to the ones at issue here had been "described as 'faulty workmanship' provisions" and unambiguously precluded coverage for the property owners' claims against their contractor for faulty foundation and framing work. *McGowan*, 100 P.3d at 525.

Nautilus also cites *Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc.*, 958 So.2d 634, 641, 642 (La. 2007), in which the Louisiana Supreme Court likewise recognized that "[a] CGL policy is not written to guarantee the quality of the insured's work or product" before holding that exclusions identical to those at issue here "clearly exclude[d] coverage for damage to the property on which [the contractor] and/or its subcontractor, worked."   The court also concluded that the exclusions precluded coverage for property "that must be repaired or replaced because the work performed by [the contractor], or on its behalf, was incorrectly performed." *Supreme Services*, 958 So.2d at 642.

While the exclusions at issue in *McGowan* and *Supreme Services* were identical to those at issue here, neither of those courts discussed the meaning of the "that particular part" language and its potential impact on the scope of coverage.  Presumably because the parties did not raise that issue, those courts simply used the basic notion that commercial general liability policies are not typically intended to cover an insured's faulty work to support their respective

holdings.

Courts from other jurisdictions are split when it comes to the meaning of the phrase "that particular part," as it appears in identical commercial general liability policy exclusions. In *Jet Line Services,* for example, the Massachusetts Supreme Judicial Court held that the phrase encompasses the entire piece of property on which the insured was working, not just the discrete part the insured was working on at the time of the occurrence. *Jet Line Services,* 537 N.E.2d at 111. The Sixth Circuit has taken the opposite approach, holding in *Fortney* that the words "'[t]hat particular part' – are trebly restrictive, straining to the point of awkwardness to make clear that the exclusion applies only to building parts on which defective work was performed, and not to the building generally." *Fortney*, 595 F.3d at 311.

Although the Montana Supreme Court has discussed various so-called "business risk" exclusions in other contexts, it has not addressed the meaning or impact of the "that particular part" language at issue here. *See e.g. Swank Enterprises, Inc. v. All Purpose Services, Ltd.*, 154 P.3d 52 (Mont. 2007); *Taylor-McDonnell Const. Co. v. Commercial Union Ins. Co.*, 744 P.2d 892 (Mont. 1987). Because the Montana Supreme Court has not yet had the opportunity to consider the meaning of these policy provisions, this Court is tasked with predicting how it would rule on the issue. *See Medical Laboratory Mgmt. Consultants v. American*

*Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). As discussed above, exclusions (j)(5) & (6) are reasonably subject to two different interpretations. Under Montana's well-established principles of insurance contract interpretation, these exclusions are therefore ambiguous and must be strictly construed against Nautilus. The fact that courts from other jurisdictions are divided on the question of how to read the exclusions' opening words provides additional support for finding them ambiguous. *See Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 673 (Mont. 2009) (explaining that while "a split in authority over the interpretation of language in an insurance policy does not conclusively establish ambiguity," it is a factor for the court to consider). As this split in authority illustrates, exclusions (j)(5) & (6) are reasonably subject to two different interpretations.

Strictly construed against Nautilus, exclusion (j)(5) must be read to preclude coverage only for damage to that particular component part of the cabin on which the defective work was performed, if the damage can be said to arise out of that work. Likewise, exclusion (j)(6) must be read as applying only to that particular part of the Sawtooth Cabin on which defective work was performed. Whether the damage to the framing was caused by Vintage's defective work on the framing, such that coverage for the damage would be excluded, or from the subcontractors'

work on the foundation, such that coverage would exist, is a genuine issue of material fact precluding summary judgment.

## B.     Exclusion (l):  Damage to Your Work

Nautilus also moves for summary judgment based on exclusion (l), which states that the insurance provided by the Policies does not apply to:

### l.  Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Dkt. 17-1, at 13.

Although Nautilus cites this exclusion in its opening brief, it offers virtually nothing in the way of supporting argument.  In fact, Nautilus effectively concedes in its reply brief that exclusion (l) does not apply.  By its terms, exclusion (l) only applies to property damage that is "included in the 'products-completed operations hazard.'" Dkt. 17-1, at 13.  As Nautilus recognizes, the Policies' products completed operations hazard provisions do not apply unless the insured's work has been completed.  Dkt. 17-1, at 23.  Nautilus admits that "[i]t is undisputed that Vintage did not complete either its contractual obligations or otherwise put the Sawtooth Cabin to its intended use."  Dkt. 22, at 15-16.  Because it is undisputed

that the Sawtooth Cabin project was not completed, the "property damage" at issue

is not included in the "products completed operations hazard" and does not fall

within the scope of exclusion (l).   Nautilus has effectively abandoned any

argument to the contrary, and is not entitled to summary judgment based on

exclusion (l).

### C.   Exclusion (m): Damage to Impaired Property or Property Not Physically Injured

Nautilus also moves for summary judgment based on exclusion (m), which

precludes coverage for:

### m.   Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden an accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Dkt. 17-1,at 13.

According to Nautilus, this exclusion clarifies that the Policies were not meant to

operate as a performance bond, and clearly precludes coverage for Roaring Lion's

claims that Vintage's work on the Sawtooth Cabin's framing and foundation was deficient. But it is the language of the policy under scrutiny — not the generally perceived purpose of a commercial general liability policy — that determines coverage. *Allstate*, 188 P.3d 1042, ¶ 16.

By its terms, exclusion (m) applies only to property damage to "impaired property" or "property that has not been physically injured." The Policies define "impaired property," as "tangible property, other than 'your product' or 'your work', that cannot be used or is less useful" for various reasons. Dkt. 17-1, at 21. Because the Sawtooth Cabin's framing work was completed by Vintage, it constitutes "[y]our work" as defined by the Policies.[8] This means that the framing is not "impaired property" to which exclusion (m) might apply. Exclusion (m) might nevertheless apply if the "property damage" Roaring Lion alleged in the underlying lawsuit was to "property that ha[d] not been physically injured." Dkt. 17-1, at 21. The Policies do not define the term "physically injured." In its complaint against Vintage, Roaring Lion alleged that defects in the cabin's foundation and framing caused structural damage and failure. Dkt. 17-3, at ¶¶ 9-24. Structural damage and failure fit within the usual, common sense meaning of

---

[8] As discussed above, the Policies define "[y]our work" as "[w]ork or operations performed by you or on your behalf." Dkt. 17-1, at 24.

the term "physically injured."   Because Roaring Lion claimed damage to property that had been physically injured, Nautilus is not entitled to summary judgment based on exclusion (m).

## IV.    Conclusion

For all of the above reasons,

IT IS RECOMMENDED that Nautilus's motion for summary judgment be DENIED.

DATED this 15th day of July, 2011

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge